Steven C. Moore, Esq., Colorado Bar #009863
Walter R. Echo-Hawk, Esq., Colorado Bar #005216
K. Jerome Gottschalk, Esq., New Mexico Bar #3799
**NATIVE AMERICAN RIGHTS FUND**
1506 Broadway
Boulder, Colorado 80302-6296
smoore@narf.org

Damon Williams, Esq., Kansas Bar #20943
Amelia C. Holmes, Esq.  Kansas Bar #20346
Kickapoo Tribal Legal Department
**KICKAPOO TRIBE IN KANSAS**
Post Office Box 110
1107 Goldfinch Road
Horton, Kansas 66439
holmesameliac@yahoo.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

_____
                                            )
KICKAPOO TRIBE OF INDIANS OF THE            )
KICKAPOO RESERVATION IN KANSAS,             )
                                            )
    Plaintiff,                              )
                                            )   No. 06-2248 CM-DJW
    v.                                      )
                                            )
ARLEN LANCASTER, et al.                     )
                                            )
    Defendant.                              )
                                            )
_____)

**PLAINTIFF KICKAPOO TRIBE'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY THE COURT'S CONSIDERATION OF PLAINTIFF'S <u>SECOND</u> PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING WATER RIGHTS CLAIMS**

Introduction

On November 21, 2006, the Federal defendants in the above-captioned action filed a *Motion To Stay The Court's Consideration Of Plaintiff's Second Pending Motion For Partial Summary Judgment Concerning Water Rights Claims*. In it, they allege that due to jurisdictional defenses raised in their motion to dismiss, filed with the Court on October 31, 2006, the Court should make a final disposition of the motion to dismiss prior to proceeding with the issues raised in the Tribe's second pending motion for summary judgment. The Tribe disagrees, and believes that the Court cannot rule on the motion to dismiss until it has ruled on the merits of (1) the Tribe's assertion of the existence of a federal trust duty to protect its water rights, and (2) its assertion of a breach thereof in the specific context of this case.

The existence of the trust duty is raised in the context of the second motion for partial summary judgment, and the material facts therein are not in dispute. The existence of the trust is a necessary legal predicate to the second question – whether that trust has been and continues to be breached by the conduct of the Federal Defendants. Those facts are in dispute. Thus, the jurisdictional facts and substantive facts are intertwined and in dispute. A hearing on the merits will likely be required prior to the Court entering a ruling on the latter question. For these reasons described in more detail herein, the Tribe opposes the motion to stay.

Argument

While a court can consider whether its jurisdiction has been properly invoked at any time, either by motion of a party or *sua sponte*, the Tribe does not agree with the Federal Defendants' claim that their general immunity from suit bars them being named as a defendant in this action. Exceptions to general rules of federal sovereign immunity aptly apply here to hold them accountable for their failure to protect Tribe's the water rights and resources. These issues will

be taken up in more detail in the Tribe's response to the Federal Defendants' motion to dismiss. In their motion to stay, however, the Federal Defendants have missed the dispositive procedural principle that the Court cannot rule on a motion to dismiss under Rule 12(b)(1), Fed. R. Civ. Pro., when jurisdictional facts are intertwined with substantive facts relating to the merits of the case.

The United States has a trust obligation to Indian tribes such as the Kickapoo Tribe. In the case of the Kickapoo Tribe, this trust obligation was knowingly and willingly undertaken more than two centuries ago, with the first Treaty between the two sovereigns in 1809. 7 Stat. 117 (1809). The Supreme Court recognized as early as 1832 that by virtue of its treaty promises and resulting relationship the United States possesses an obligation to protect the trust resources of Indian tribes against encroachment by outside entities under perceived authority of state law. *Worcester v. Georgia*, 31 U.S. [6 Pet.] 515, 544-49, 551-54 (1832). The Court has made it clear that the United States holds the legal title to reserved Indian water rights in trust for Indian tribes and acts as trustee in litigation concerning those water rights. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 809-10 (1976); *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 567 n. 17 (1983); *Nevada v. United States,* 463 U.S. 110, 135 n. 15, 136-142 (1983).

In carrying out its duties and programs mandated by specific federal laws, such as the programs administered by Arlen Lancaster of the Natural Resources Conservation Service at issue here, "the United States, as trustee for Indian tribes, has a responsibility to protect their rights and resources," including their "senior water rights." *Klamath Water Users Protective Association v. Patterson,* 204 F.3d 1206, 1209, 1213 (9th Cir. 2000), *as amended by,* 203 F.3d 1175 (9th Cir. Jan. 28, 2000), *cert. denied,* 531 U.S. 812 (2000). This duty extends to ensure that

federal programs such as water diversions do not impede senior Indian water rights, whether quantified or not. *Kandra v. United States,* 145 F. Supp. 2d 1192, 1196-97, 1202 (D. Or., 2001); *Pacific Coast Federation of Fishermen's Assoc. v. U.S. Bureau of Reclamation,* 138 F. Supp.2d 1228, 1231 (N.D., Ca., 2001). The Federal Defendants in this case have an affirmative duty to protect the Tribe's water rights and to exercise their statutory and contractual authority and programs in a manner that protects and does not harm those water rights and trust resources. In breach of this duty, not only have the Federal Defendants not protected the Tribe's water rights, but they have aided and abetted the non-Indian upstream farmers in the Upper Delaware and Tributaries Watershed in usurping those rights.[1]

In the its second motion for partial summary judgment, the Tribe seeks a determination of (1) the existence of federal reserved water rights with a priority date of 1832, of sufficient quantities to fulfill the purposes for the creation of the Tribe's reservation, emanating from the Treaty of Castor Hill in 1832, 7 Stat. 391, under the *Winters* doctrine, *United States v. Winters*, 207 U.S. 564 (1908); (2) the purposes for which the reservation was created, collectively called "homeland" purposes; and (3) the existence of a responsibility on the part of the United States and its departments, agencies and officers to protect these reserved *Winters* water rights from encroachment by other water users under state law.

---

[1] This obligation also extends to all departments, agencies and officials of the United States government, including the Federal Defendants named herein. *See, e.g., Pyramid Lake Paiute Tribe of Indians v. United States Department of Navy,* 898 F.2d 1410, 1420 (9th Cir. 1990) (Navy had a trust obligation to protect Indian water rights); *Klamath Tribes v. United States,* 1996 WL 924509 (D. Or. 1996) at 6-7 (Forest Service has a substantive trust duty to protect Indian treaty resources "to the fullest extent possible" and manage a national forest so as not to harm Indian treaty rights and resources). *See also, Cobell v. Norton,* 240 F.3d 1081, 1098-99, 1106-07 (D.C. Cir. 2001) (Secretary of the Treasury also has trust duties to individual Indians). Where federal actions pertain to the diversion of water for projects that may affect Indian water rights and trust resources, including reservation water supply, the responsible federal agency is, at minimum, "obligated to exercise [its] statutory and contractual authority to the fullest extent possible in recognition of [its] fiduciary duty to the tribe and to formulate a closely developed regulation that would preserve water for the tribe." *Pyramid Lake Paiute Tribe of Indians v. Morton,* 354 F. Supp. 252, 256-258 (D. Nev. 1972).

Notably, in their motion to dismiss, the Federal Defendants <u>admit</u> the existence of the Tribe's *Winters* water rights, <u>admit</u> that these rights are to serve the purposes for which the reservation was created, and <u>admit</u> that said rights are Fifth Amendment property rights which vested upon the creation of the Kickapoo Reservation in 1832. Motion to Dismiss at 25-26. The only issue of law for which the Tribe seeks resolution in its second motion for partial summary judgment, which the Federal Defendants contest, is the extent and nature of the United States' legal duty to protect the Tribe's *Winters* water rights from encroachment. There are no material facts in dispute relating to the second motion for partial summary judgment and it is ripe for disposition.

Concerning the question of whether the trust duty to the Tribe has been breached in this case, however, there are substantive facts in dispute. The Tribe, in its Complaint, has asserted that the Federal Defendants – Arlen Lancaster of the Natural Resource Conservation Service of the Department of Agriculture and James Cason of the Bureau of Indian Affairs of the Department of the Interior – have by their misfeasance and/or nonfeasance <u>breached</u> their trust duties to protect the Tribe's *Winters* water rights from encroachment. *See* Complaint, Counts One – Three, and Prayer for Relief ¶ 2. The Tribe has presented to the Court a detailed recitation of the conduct and activities of the Federal Defendants which it contends are facial evidence of breach of the federal trust duty to the Tribe. These defendants have participated <u>actively</u> in the funding and administration of federal land conservation and treatment programs which have ruined the Tribe's water supply, depriving the Tribe and its members of a dependable supply for critical human social and economic needs. *See* Declarations of Steve Cadue, Rick Jones, John Thorpe, and Jason Auvil in support of the *Kickapoo Tribe's First Motion for Partial Summary*

*Judgment*. In derogation of the trust, these activities have resulted in the squandering of the Kickapoo's *Winters* water rights for the benefit of non-Indian farmers upriver from the Tribe.

These factual assertions of breach of the duty to protect water rights and resources are sharply contested by the Federal Defendants. But their resolution is intertwined with and has a direct bearing on whether this court has jurisdiction over these defendants or whether they are immune from suit. The Supreme Court has recently made it clear that in the context of Indian trust resources the United States and its departments, agencies and officers all have an affirmative obligation to preserve and thus not waste the corpus of the trust, and sovereign immunity is waived for appropriate remedy – even for the United States to be held liable in damages for a breach of the obligation. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475-76 (2003)("fiduciary actually administering [Indian] trust property may not allow it to fall into ruin on his watch" and damages are an appropriate remedy). So the resolution of the Court's jurisdiction turns in large measure on the fact dispute over the wasting of the corpus of the Kickapoo water trust, which will likely require a hearing on the merits.[2]

The Tribe is aware that one general practice in this Court is "to have questions of immunity resolved before being required to engage in discovery and other pretrial proceedings * * * to spare a defendant not only unwarranted liability, but unwarranted demands customarily

---

[2] Significantly, the United States took the position in *White Mountain Apache* that the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, provides a waiver of sovereign immunity for equitable relief. *White Mountain Apache*, 537 U.S. at 478-79 ("Government argues that the inference of a damages remedy is unsound simply because damages are inappropriate as a remedy for failures of maintenance, prospective injunctive relief being the sole relief tailored to the situation."); *and see* Reply Brief for the United States, 2002 WL 31455447 at 19-20. The United States took the same position in the seminal Indian breach of trust case, *United States v. Mitchell*, 463 U.S. 206, 227 & n. 32 (1983)("*Mitchell II*")("The Government contends that violations of duties imposed by the various statutes may be cured by actions for declaratory, injunctive or mandamus relief against the Secretary, although it concedes that sovereign immunity might have barred such suits before 1976, * * * [when] Congress enacted a general consent to such suits. See 5 U.S.C. § 702."). The Kickapoo Tribe brought suit here under the APA, 5 U.S.C. § 702, and thus believes that sovereign immunity has been waived for the equitable remedies sought herein. This issue will be addressed in detail in the Tribe's response to the Federal Defendants' motion to dismiss, to be filed with the Court on January 5, 2007.

**PLAINTIFF KICKAPOO TRIBE'S RESPONSE IN OPPOSITION TO**  
**FEDERAL DEFENDANTS' MOTION TO STAY CONSIDERATION**                                                               6

imposed upon those defending a long drawn out lawsuit." *Parks v. State*, 2006 WL 2331162, *1 (D.Kan.,2006); *Howse v. Atkinson*, 2005 WL 994572, *1 (D.Kan. 2005), *both citing Siegert v. Gilley*, 500 U.S. 226, 232 (1991); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, however, the resolution of the legal and factual questions relating to the trust duty to protect its *Winters* water rights from encroachment necessarily, and the breach thereof, are *determinative* of the question of whether sovereign immunity shields the Federal Defendants from suit. The two matters are inextricably intertwined. Thus, these law and fact questions must be decided by the Court in determining the disposition of the motion to dismiss.

The procedural posture presented here is similar to that confronted in decisions of the Tenth Circuit and this District.

> We have recognized an exception to th[e] general rule, where "the jurisdictional question is intertwined with the merits of the case." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987); *see also Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir.2000); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 (10th Cir.1996). We have stated that subject matter jurisdiction and the merits are considered to be intertwined "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." *Wheeler*, 825 F.2d at 259; *see also Pringle*, 208 F.3d at 1223.

*Sizova v. Nat. Institute of Standards & Technology,* 282 F.3d 1320, 1324 (10th Cir. 2002). *See also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).

The practice in this District is the same, albeit in the context of personal jurisdiction. "Discretion resides with the district court to choose the appropriate procedure for deciding a motion to dismiss for lack of personal jurisdiction. A court may decide these jurisdictional issues by reference to affidavits, after a pretrial evidentiary hearing, or at trial if the issues are intertwined with the merits of the suit. *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992)." *Wempe v. Sunrise Medical HHG, Inc.* 61 F.Supp.2d 1165, 1167 (D. Kan. 1999).

The practice in the Ninth Circuit is consistent and instructive. In *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983), the court held that a "jurisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Augustine,* 704 F.2d at 1077 (internal citations omitted).

> This case was before the district court on a motion to dismiss for want of subject matter jurisdiction.  Because the jurisdictional issue is dependent upon the resolution of factual issues going to the merits, it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motion.  That is, it was improper for the district court to grant the government's motion unless the relevant facts were not in dispute and the government was entitled to prevail as a matter of law. (Citation omitted.)  The district court did not properly apply that standard here.  This action was dismissed on the basis of the pleadings and supporting affidavits.  No findings of fact or conclusions of law were entered, and the district court conducted no evidentiary hearings.  The moving papers, however, establish a clear conflict as to the central factual issues in the case.  * * *  In such circumstances, a grant of summary judgment on the merits would have been improper.  It was thus improper for the district court to sustain the government's factual challenge to subject matter jurisdiction without conducting an evidentiary hearing on the merits.  The district court did not conduct the type of plenary hearing on the merits necessary to allow it to resolve the basic factual issues in the case.  The cause is therefore reversed and remanded for determination of the relevant factual issues at trial.

*Augustine*, 704 F.2d at 1079.  *Accord*, *Sun Valley Gasoline, Inc. v. Ernst Enterprises*, *Inc.,* 711 F.2d 138, 139-140 (9th Cir. 1983); *see also Sidney v. Zah*, No. 83-1511 (9th Cir. December 20, 1983)(disputed factual question of whether entity met definition of an Indian tribe under federal statute was determinative of and intertwined with matter of subject matter jurisdiction)(unreported; copy attached hereto as Attachment A).

Here, the jurisdictional issues and the substantive issues relating to the existence of the trust duty to protect the Tribe's water rights, and the breach thereof resulting from the Federal Defendants' active development of the water resources of the Upper Delaware and Tributaries

Watershed for the benefit of the non-Indian upstream water users, are so intertwined as to make it impossible for the Court to grant the Federal Defendants' motion to dismiss at this stage of the proceedings. As the Supreme Court in *White Mountain Apache*, *supra*, made clear, where the trustee actually causes the harm to the trust asset, the sovereign immunity of the United States is not a defense. Here there are material, relevant and quite likely determinative factual issues in dispute bearing on the harm to the Tribe's trust assets for which the Tribe deserves a hearing on the merits.

Importantly, in this District dispositive motions do not always trump the continuation of litigation in contexts such as are presently before the Court. "The general policy in this District is not to stay discovery even though dispositive motions are pending." *Howse v. Atkinson,* 2005 WL 994572, 1 (D. Kan. 2005)(emphasis added), *citing Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994). Indeed, the Tribe will very likely seek to proceed with discovery on other phases of this lawsuit – especially relating to the breach of trust claim -- pending the disposition of motions currently on file.

## Conclusion

The Court only can make a fully informed decision on the Federal defendants' motion to dismiss with the benefit of comprehensive briefing on the trust duties of the United States to the Tribe, and following a hearing on the merits of the asserted breach of that trust in the context of the claims made by the Tribe, and how these fact and law questions inform the scope of sovereign immunity of the United States. For that reason, the Federal Defendants' motion to dismiss should be the motion that is stayed, pending the disposition of both of the Tribe's motions for partial summary judgment and a hearing on the merits of the Tribe's claims of a breach of the trust duty to protect its *Winters* water rights.

In the interest of judicial economy and the expeditious administration of this case the Court should, if it is inclined to stay consideration of the <u>second</u> summary judgment motion pending a ruling on the motion to dismiss, nonetheless proceed with consideration of the first <u>motion</u> for partial summary judgment, relating to the condemnation obligation of Nemaha Brown Board of Directors. The Tribe seeks a date for oral argument on its motions for partial summary judgment, at the earliest possible time. The Tribe is interested in securing the vindication of its rights under the 1994 Agreement with the collective defendants – Federal and non-Federal – as swiftly as possible.

Dated this 1st day of December, 2006.

      Respectfully submitted,

s/ Steven C. Moore_____
Steven C. Moore, Esq.
Walter R. Echo-Hawk, Esq.
K. Jerome Gottschalk, Esq.
**NATIVE AMERICAN RIGHTS FUND**
1506 Broadway
Boulder, CO 80302-6296
smoore@narf.org

s/ Damon Williams_____
Damon Williams, Esq.
Amelia C. Holmes, Esq.
Kickapoo Tribal Legal Department
**KICKAPOO TRIBE IN KANSAS**
Post Office Box 110
1107 Goldfinch Road
Horton, Kansas 66439
holmesameliac@yahoo.com

ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on the 1st day of December, 2006, the foregoing PLAINTIFF KICKAPOO TRIBE'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY THE COURT'S CONSIDERATION OF PLAINTIFF'S SECOND PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING WATER RIGHTS CLAIMS was filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Damon K. Williams | dkeone@yahoo.com |
| Kim Jerome Gottschalk | jeronimo@narf.org |
| Steven Carl Moore | smoore@narf.org |
| Walter R. Echo-Hawk | wechohwk@narf.org |
| Daniel G. Steele | daniel.steele@usdoj.gov |
| Robin Barkett Moore | robin.moore@usdoj.gov |
| David W. Davies | daviesd@ksag.org |
| David M. Traster | dtraster@foulston.com |
| Jay F. Fowler | jfowler@foulston.com |
| Timothy B. Mustaine | tmustaine@foulston.com |
| J. Steven Massoni | jsm@massonilaw.com |

                                                s/ Amelia C. Holmes_____
                                                Amelia C. Holmes
                                                Kickapoo Tribal Legal Department
                                                **KICKAPOO TRIBE IN KANSAS**
                                                Post Office Box 110
                                                1107 Goldfinch Road
                                                Horton, Kansas 66439
                                                holmesameliac@yahoo.com