IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KICKAPOO TRIBE OF INDIANS OF THE KICKAPOO RESERVATION IN KANSAS,<br><br>*Plaintiff,*<br><br>v.<br><br>ARLEN LANCASTER, *et al.*,<br><br>*Defendants.* | Civil Action No. 06-2248-CM-DJW |

**DEFENDANT NEMAHA BROWN JOINT WATERSHED DISTRICT'S BRIEF OPPOSING PLAINTIFF'S REQUEST FOR EXPEDITED CONSIDERATION**

**Introduction**

Plaintiff Kickapoo Tribe filed its First Motion for Partial Summary Judgment (Doc. No. 42) and its supporting brief (Doc. No. 43) within a week of the Non-Federal Defendants' Answers and the Federal Defendants' Motion to Dismiss, before the parties had undertaken any discovery in this case or made any of the initial disclosures required by Fed R. Civ. P. 26(a). That motion was premised on the Tribe's notions that: (1) in order for the Nemaha Brown Joint Watershed District to qualify as a "local sponsor" of water projects funded under the federal PL-566 program, Nemaha Brown had to have legal authority to take by eminent domain any land necessary for the construction of those projects, and also had to promise to utilize that condemnation power; and (2) the 1994 UDT Agreement, which covers 21 water projects, must therefore be interpreted as including an implied promise by Nemaha-Brown to condemn and pay for any land needed for one of those 21 projects—the Plum Creek multipurpose dam and reservoir—

1

even though the express terms of the agreement call for *the Tribe* to acquire the land necessary for the on-reservation Plum Creek dam (Dam No. 21-14) and three smaller on-reservation dams, and also call upon the Tribe to pay most of the cost of acquiring that land (the balance to be paid by the federal Soil Conservation Service); by contrast, the 1994 Agreement expressly calls on Nemaha-Brown to acquire and pay only for the land necessary for 17 off-reservation water projects.[1]  *See* Docket No. 42, at 2; Docket No. 43, at 22-31.

After first asserting these two key premises of its summary judgment motion—premises which it describes as raising "pure legal questions"—the Tribe twice repeated its demand for a quick ruling on these issues.  *See* Doc. No. 64; Doc. No. 73.  The Tribe has now taken a fourth bite at this same apple in its "Request for Expedited Consideration" (Doc. No. 91, filed May 8, 2007).

---

[1] With respect to the acquisition of land rights, the 1994 UDT Agreement provides:

The Watershed District and the Tribe will acquire such land rights as will be needed in connection with the works of improvement.  The percentages of land rights costs to be paid by the sponsors and the SCS are as follows:

| WORKS OF IMPROVEMENT | WATERSHED DISTRICT (PERCENT) | TRIBE (PERCENT) | SCS (PERCENT) | ESTIMATED LAND RIGHTS COSTS (DOLLARS) |
|---|---|---|---|---|
| 17 Floodwater Recording Dams | 100.0 | 0 | 0 | 652,300 |
| 3 Floodwater Recording Dams | 0 | 100.0 | 0 | 277,700 |
| Multipurpose Dam No. 21-14 | 0 | 98.3 | 1.7 | 749,200 |
| Recreational Facilities Dam No. 21-14 | 0 | 50.0 | 50.0 | 172,200 |

2

**Argument and Authorities**

In the Tribe's fourth and latest attempt to secure a quick favorable ruling on issues first raised in its First Motion for Partial Summary Judgment, it blames the Nemaha Brown Defendants for the Court's delay in deciding those issues, much as in its three previous attempts. *See* Doc. No. 91, at 2-3. As before, the Tribe's blame game is nonsense. The Tribe knows full well that the Federal Defendants have filed a motion to dismiss that raises serious and difficult jurisdictional issues, and this Court has obviously given its highest priority in this case to deciding that motion. That priority is completely appropriate, because, if the Federal Defendants' motion is granted, some or all of the Tribe's claims against the other defendants would be mooted. It would make little sense for this Court to rush to decide the non-dispositive issues the Tribe has raised, or to force discovery on those issues, before the Court decides the Federal Defendants' difficult dispositive motion.

Besides its reflexive whinging about delay, the Tribe tries to excuse its needless repetition of arguments it admits it has made before, *see* Doc. No. 91 at 3, by claiming that in recent discovery responses Nemaha Brown has reversed field and newly "conceded" that the two questions the Tribe is now pressing for the fourth time both present a "pure question of law" independent of any factual dispute. *See id.* at 4-6. In accusing Nemaha Brown of flip-flopping the Tribe is once again speaking nonsense.

The Tribe's contention that Nemaha Brown has somehow belatedly admitted that the Tribe's two pet issues involve no factual disputes is based on Nemaha Brown discovery responses explaining that, at the time of the 1994 UDT Agreement, Nemaha Brown understood the Tribe to have undertaken to acquire

3

the land for the Plum Creek (by eminent domain if necessary), and that questions of whether the Tribe had the power to fulfill that undertaking never came up. *See id.* at 4-5. In those responses, Nemaha Brown described the question of the scope of the Tribe's eminent domain power—a question that went unmentioned until well into the present century—as a "legal issue." Now, the Tribe concludes that this shorthand description of a complex question somehow implies a concession that resolution of the question does not require consideration of any factual issues. That conclusion is wrong; we make no such concession.

The Tribe goes on to argue that if the Plum Creek dam is constructed, the lake it creates will inundate some land outside the boundaries of the Tribe's reservation, and that therefore Nemaha Brown must be called on to condemn that land because the Tribe does not have the legal power to do so but Nemaha Brown does. *See id.* at 5-6. This argument ignores the alternative that the Federal Defendants might exercise their eminent domain powers for the benefit of the Tribe, something the Tribe alleges in this lawsuit the Federal Defendants are obligated to do, *see* Doc. No. 1, p. 28, ¶ 90; p. 38, ¶ 130. This argument also confuses the scope of the watershed district's obligation under the 1994 UDT Agreement (the fundamental issue) with the scope of its Kansas law powers. Those are not the same thing.

The Tribe also asserts that Nemaha Brown's obligations under the 1994 UDT agreement are controlled by Federal regulations governing eligibility for "local sponsor" status, and not by the contractual language. *See* Doc. No. 91 at 6-7. This assertion turns normal principles of contract interpretation on their head. It is hornbook law that the interpretation of a contract begins (and often ends) with the contractual language. *See, e.g.,* 11 R. Lord, Williston on Contracts § 32.2,

4

pp. 402-407 (4th ed. 1999).  That is not to say that legal principles are irrelevant in determining a contract's meaning.  But the proper interpretation of the 1994 UDT Agreement starts with that agreement, not with the Code of Federal Regulations.

Finally, the Tribe's assertion that it is "clearly" powerless to exercise eminent domain powers over fee land within its own reservation but not owned by Indians is incorrect.  The cases on which the Tribe relies for this assertion (*see* Doc. No.  43, at 24), *Montana v. United States*, 450 U.S. 564 (1981) (Indian Tribe cannot ban hunting and fishing on land within reservation but owned by non-members) and *Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408 (1989) (Indian Tribe cannot apply its zoning regulations to land within reservation but owned by non-members), are not eminent domain cases, and do not discuss tribal eminent domain powers, even in dicta; moreover, the *Brendale* court was badly fragmented, and produced no majority opinion.  And the only recent law review article to discuss contemporary eminent domain powers of Indian Tribes suggests that tribal eminent domain power is broader than the Tribe's reading of *Montana* and *Brendale* would suggest.  *See* S. L. Leeds, *By Eminent Domain or Some Other Name:  A Tribal Perspective on Taking Land*, 41 Tulsa L. Rev. 51, 72-77 (Fall 2005) (discussing "Contemporary Tribal Eminent Domain Powers").

We do not mean to suggest that the Tribe clearly has eminent domain powers on all its reservation land.  But we do suggest that the question is uncertain and difficult, that there are no really apposite cases, and that it would not expedite this case for the Court to decide the issue now.  Certainly we do not believe that the quick decision the Tribe has repeatedly pressed for will help to focus discovery, as the Tribe imagines.

**Conclusion**

In our three Rule 56(f) briefs (Docs. Nos. 61, 70, and 75) we have explained that the Court should not rule on the Tribe's pending summary judgment motions until normal discovery has been completed, and that the premature partial decisions sought by the Tribe would not expedite this case. We will not repeat our arguments now. But the Tribe's latest attempt to bring its pet issues before the Court has no more merit than its previous attempts did. We ask that our Rule 56(f) motion be granted in its entirety, and that the Tribe's "Motion for Expedited Consideration" be denied.

Respectfully submitted,

Jay F. Fowler, KS # 10727
Timothy B. Mustaine, KS #10758
David M. Traster, KS #11062
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67202
(316) 267-6371
jfowler@foulston.com
dtraster@foulston.com
tmustaine@foulston.com

Derenda J. Mitchell, KS #11690
Office of the Attorney General
120 S.W. 10th Avenue, 2d Floor
Topeka, KS 66612-1597
(785) 296-2215
mitcheld@ksag.org

*Attorneys for the Nemaha Brown
 Joint Watershed District and its
 Board Members*

By /s/ *Timothy B. Mustaine*
    Timothy B. Mustaine, KS #10758

## Certificate of Service

I hereby certify that on May 22, 2007, a true and correct copy of the foregoing Defendant Nemaha Brown Joint Watershed District's Brief Opposing Plaintiff's Request for Expedited Consideration was electronically filed via the Court's CM/ECF system, which will send notice of electronic filing to the following counsel for other parties:

    Amelia C. Holmes  (holmesameliac@yahoo.com)
    Damon K. Williams  (dkeone@yahoo.com)
    Kim Jerome Gottschalk  (jeronimo@narf.org)
    Steven Carl Moore  (smoore@narf.org)
    Walter R. Echo-Hawk  (wechohwk@narf.org)
    Daniel G. Steele   (danielsteele@usdoj.gov)
    Robin Barkett Moore  (robin.moore@usdoj.gov)
    J. Steven Massoni (jsm@massonilaw.com)

    /s/ *Timothy B. Mustaine*
    Timothy B. Mustaine, KS #10758