Steven Carl Moore, Esq., Colorado Bar #9863
K. Jerome Gottschalk, Esq., New Mexico Bar #3799
**NATIVE AMERICAN RIGHTS FUND**
1506 Broadway
Boulder, Colorado 80302-6296
smoore@narf.org


Amelia C. Holmes, Esq.  Kansas Bar #20346
Kickapoo Tribal Legal Department
**KICKAPOO TRIBE IN KANSAS**
Post Office Box 110
1107 Goldfinch Road
Horton, Kansas 66439
holmesameliac@yahoo.com


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| _____ )<br>KICKAPOO TRIBE OF INDIANS OF THE )<br>KICKAPOO RESERVATION IN KANSAS, )<br> )<br>    Plaintiff, )<br> )<br>        v. )<br> )<br>MICHAEL BLACK, et al. )<br> )<br>    Defendants. )<br>_____) | No. 06-2248 CM-DJW |


**BRIEF OF THE PLAINTIFF KICKAPOO TRIBE IN KANSAS IN OPPOSITION TO
MOTION TO DISMISS THE INDIVIDUAL BOARD MEMBERS OF THE NEMAHA
BROWN WATERSHED JOINT DISTRICT NO. 7**

## TABLE OF CONTENTS

Introduction ...........................................................................................................1

Applicable Standard Of Review Of Rule 12(B)(6) Motion to Dismiss ...................1

Summary of Argument ............................................................................................3

Nature and Scope of the Claims to Liability Against the Individual
Board Member Defendants ......................................................................................6

Additional Factual Allegations Assumed to be True for Purposes of the
Defendants' Motion ................................................................................................8

Question Presented ...................................................................................................9

Argument and Authorities .......................................................................................9

1. Whether to vote to invoke the District's condemnation authority to secure the land
   rights for the Plum Creek Project was an administrative or ministerial activity, not
   a discretionary legislative activity and thus not protected by legislative
   Immunity ....................................................................................................9

2. The facts as plead by the Tribe, and assumed to be true for purposes of the Motion,
   demonstrate that the individual Defendants lacked any discretion to refuse to fulfill
   the condemnation obligation ........................................................................11

3. The District's approval and execution of the Agreement in 1994 was the last
   discretionary, policy action taken by the District Board regarding the Plum Creek
   Project; subsequent action to refuse to vote to condemn was the application of this
   discretionary policy act to a specific case and is therefore administrative or
   ministerial in nature ..................................................................................14

4. 4. Officials singling out an individual or entity for disparate treatment due to racial
   animus, or actions taken by officials either in bad faith, because of corruption, or
   primarily in furtherance of personal instead of public interests, are not shielded
   from liability by absolute immunity ............................................................16

Conclusion ...........................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Acierno v. Cloutier*, 40 F.3d 597 (3rd Cir. 1994)......................................................................15

*Amy v. Supervisors*, 78 U.S. 136 (1870) ...................................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) .............................................................1

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ...................1, 18

*Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998)..............................................10, 14

*Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000) ..........................................................17

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*,
873 F.2d 1357 (10th Cir. 1989) ....................................................................................................2

*Chateaubriand v. Gaspard*, 97 F.3d 1218 (9th Cir. 1996) .........................................................3

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................2

*Cutting v. Muzzey*, 724 F.2d 259 (1st Cir. 1984) ......................................................................17

*Effkay Enterprises v. J.H. Cleaners, Inc.*, 2008 WL 2357698 (D. Colo. 2008) .......................2

*Executive Risk Indem. Inc. v. Sprint Corp.*, 282 F.Supp.2d 1196 (D. Kan. 2003).....................2

*Figures v. Board of Public Utilities of Kansas City, Kansas*,
731 F.Supp. 1479 (D. Kan. 1990)...............................................................................................18

*Frizzell v. Paulsen*, 204 Kan. 857, 465 P.2d 982 (1970) .........................................................16

*Hafer v. Melo*, 502 U.S. 21 (1991) ..............................................................................................3

*Haskell v. Washington Tp.* 864 F.2d 1266 (6th Cir. 1988) .................................................17, 18

*Hays County v. Hays County Water Planning Partnership*,
69 S.W. 3d 253 (Tex.App.-Austin 2002).....................................................................................10

*Howards v. McLaughlin*, 634 F.3d 1131 (10th Cir. 2011) ..........................................................3

*Hughes v. Tarrant County*, 948 F.2d 918 (5th Cir. 1991) ........................................................17

*In re Perry*, 60 S.W.3d 857 (Tex. 2001).....................................................................................10

*Jim Sowell Const. Co., Inc. v. City of Coppell,*
82 F. Supp.2d 616 (N.D. Tex. 1998) ......................................................................3

*Johansen v. City of Bartlesville*, 862 F. 2d 1423 (10th Cir. 1988) ............................................2

*Kamplain v. Curry County Board of Commissioners,*
159 F.3d 1248 (10th Cir. 1998) .....................................................................2, 10, 14, 16

*Lopez v. Trevino*, 2 S.W.3d 472 (Tex. App.-San Antonio 1999)...........................3, 10, 14, 17

*Meecorp Capital Markets v. Tex-Wave Industries, LP,*
2006 WL 2883054 (S.D. Tex.) .................................................................... 14-15, 17

*Mission Springs Inc. v. City of Spokane*, 134 Wash.2d 947,
954 P.2d 250 (Wash. 1998)....................................................................3, 10, 15

*NL Industries  v. Gulf and Western Industries*, 650 F.Supp. 1115 (D. Kan. 1986) ..................2

*Robertson v. Board of County Comm'rs of County of Morgan*, 985 F.Supp. 980 (D.C.Colo.
1997), *affirmed* 166 F.3d 1222 (10th Cir. 1999)....................................................3

*S.A.I., Incorporated v. General Elec. Railcar Servs. Corp.*,
935 F.Supp. 1150 (D. Kan. 1996) ......................................................................2

*Sable v. Myers*, 563 F.3d 1120 (10th Cir. 2009)........................................................16

*Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ......................2

*Trevino v. Gates*, 23 F.3d 1480 (9th Cir. 1994), *cert. denied*, 513 U.S. 932 (1994) ...............3

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163 (10th Cir. 2010)....................1

*Wrenn v. Kansas*, 561 F.Supp. 1216 (D. Kan. 1983)..................................................2

## **Constitution & Statutes**

U.S. Const. art. 1, §10................................................................................16

Kansas Watershed District Act, Kan. Stat. Ann. § 24-1201 (2011) ...........................................4

Kansas Watershed District Act, Kan. Stat. Ann. § 24-1209 (2011) ......................................4, 8

Kansas Watershed District Act, Kan. Stat. Ann. § 24-1213 (2011) ...........................................8

## **Court Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 2, 3

## **Treatises**

5B Charles Alan Wright, et al., Federal Practice and Procedure § 1357
(3d ed. 2004) ..........................................................................................................1, 2

## ATTACHMENTS

Attachment A

Attachment B

Attachment C

Attachment D

**<u>Introduction</u>**

On February 21, 2012, the Individual Defendants, Board members of the Nemaha Brown Watershed Joint District No. 7, sued in their individual capacities, filed a Motion to Dismiss the individual claims and causes of action pursuant to Fed. R. Civ. P. 12(b)(6)(Doc. 166), and supporting Memorandum (Doc. 167), on the sole ground that the Board members are protected from all of the Plaintiff's claims by absolute legislative immunity.  The Plaintiff Kickapoo Tribe in Kansas ("Tribe") files this response brief within the time limits set forth in, and in conformance with, Local Rules 6 and 7.

**<u>Applicable Standard Of Review Of Rule 12(B)6) Motion To Dismiss</u>**

In reviewing motions to dismiss under F.R.C.P. 12(b)(6), the Supreme Court has adopted the "accepted pleading standard": "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1969, 550 U.S. 544, 563, 167 L.Ed.2d 929 (2007). The Court in *Twombly* created a new factual plausibility standard, requiring facts that raise the right to relief above the "speculative level" to the "plausible level" in order for the claim to survive the motion to dismiss.  *Id*., 550 U.S. at 555, *citing* Wright, et al., 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.)("Wright, et al.").   In 2009, the Supreme Court extended the *Twombly* standard to all federal civil cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009).  The Tenth Circuit has followed the plausibility standard.  A complaint need not contain detailed factual allegations; rather, it must plead enough facts "to state a plausible claim." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1167 (10th Cir.2010).

The Tenth Circuit has held to the standard that Rule 12(b)(6) motions to dismiss are viewed with  disfavor and are rarely granted.  "Granting a motion to dismiss is a harsh remedy

which must be exercised with caution to protect the liberal rules of pleading and the interests of justice. Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Effkay Enterprises v. J.H. Cleaners, Inc*., 2008 WL 2357698, *2 (D. Colo. 2008)(internal citations omitted), citing *Cayman Exploration Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1359 (10th Cir. 1989).  See also *NL Industries  v. Gulf and Western Industries*, 650 F.Supp. 1115, 1122 (D. Kan. 1986); *Wrenn v. Kansas*, 561 F.Supp. 1216, 1220 (D. Kan. 1983); *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

In considering a motion to dismiss, the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor." *Kamplain v. Curry County Board of Commissioners*, 159 F.3d 1248, 1250 (10th Cir. 1998).  The motion can be granted only if, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Johansen v. City of Bartlesville*, 862 F. 2d 1423 (10th Cir. 1988).

"As a result of these principles, so firmly established by several decisions of the Supreme Court rendered over many years, it is now catechism, frequently recited by all federal courts, as reflected in the citation of a plethora of cases in the notes below, that the question on a motion to dismiss under Rule 12(b)(6) is whether in the light most favorable to the plaintiff, and with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief.  If the answer to the question is in the affirmative, the motion to dismiss must be denied and the action should be permitted to continue."  Wright, et al., *id*. at §1357, *citing Executive Risk Indem. Inc. v. Sprint Corp*., 282 F.Supp.2d 1196, 1200 (D.C.Kan. 2003); *S.A.I., Incorporated v. General Elec. Railcar Servs. Corp*., 935 F.Supp. 1150, 1156 (D.C.Kan. 1996);

and *Robertson v. Board of County Comm'rs of County of Morgan*, 985 F.Supp. 980 (D.C.Colo. 1997), *affirmed* 166 F.3d 1222 (10th Cir. 1999).

The courts are sparing in their recognition of absolute official immunity. *Mission Springs Inc. v. City of Spokane*, 954 P.2d 260 (Wash. 1998), *citing Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220 (9th Cir. 1996).  In moving to dismiss under Rule 12(b)(6) based on a claim of absolute immunity, "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Howards v. McLaughlin*, 634 F.3d 1131, 1140 n. 6 (10th Cir. 2011) (quotations omitted).  Since legislative immunity is an affirmative defense, the burden is on the Defendants to show that the actions they took are legislative.  *Hafer v. Melo*, 502 U.S. 21, 29 (1991); *Trevino v. Gates*, 23 F3d 1480, 1482 (9th Cir. 1994), *cert. denied*, 513 U.S. 932, 1482 (1994); *Jim Sowell Const. Co., Inc. v. City of Coppell*, 82 F. Supp.2d 616, 617 (N.D. Tex. 1998); *Lopez v. Trevino*, 2 S.W.3d 472, 473 (Tex. App.-San Antonio (1999).

## Summary of the Argument

After decades of planning and study, including substantial financial support from the Tribe and the United States, the Tribe and the Nemaha Brown Watershed District ("District") and other state and federal parties entered into an enforceable agreement in 1994 – called the 1994 Watershed Plan and Agreement – to develop the Plum Creek Project.  This Agreement bound the local sponsors – the Tribe and the District – to secure the land rights for the project, which included a large multi-purpose water storage project and 20 smaller flood retention structures upstream from the multi-purpose project.  This Agreement also set out the terms for allocation of costs for securing the land rights as well as the allocation of costs for later design and construction facets of the project.  It was contemplated there would be later steps in the

process and related agreements, to be sure, but this was much more than a "planning" agreement as the Defendants would have the Court believe.

The Tribe first sought authority from the United States to develop the project independently.  It was told that a partnership would have to be established between the Tribe and the District.  The District had the authority under Kansas law to develop the water resources of the watershed, and most of the land was fee land owned by non-Indians and not trust land owned by Kickapoo people or the Tribe.  The Tribe has never had the authority to condemn fee lands for the project – irrespective of whether the lands were within the Kickapoo Reservation or not. The 1994 Agreement thus became the basis for the promise by the District to utilize their condemnation powers as necessary to secure the land rights.

The District entered into the agreement freely and willingly – indeed its Board and staff had supported the project for many years in its dealings with the Tribe and the lead federal agency, the Soil Conservation Service (which in 1994 became the Natural Resources Conservation Service) of the Department of Agriculture.  The vote by the District to approve the 1994 Agreement was unanimous, at a regularly noticed and called meeting of the District's Board of Directors.

The District entered into the Agreement pursuant to the powers bestowed upon it by the State of Kansas through the Kansas Watershed Act, K.S.A. 24-1201 *et seq*.  Section 24-1209 of that Act sets out the corporate powers and duties of Kansas watershed districts such as the District, including the powers:

> ➢ To execute such contracts as may, by its board of directors, be deemed necessary or convenient to enable it to properly carry out the purpose for which organized;
> ➢ To construct, improve, maintain and operate works of improvement including such facilities and appurtenances as necessary;
> ➢ To acquire land and interests in land by gift, purchase, exchange or eminent domain;

> ➤ To cooperate and contract with persons, firms, associations, partnerships and private corporations, and with other watershed districts, drainage districts, and cities of all classes of this state, and with drainage districts, watershed districts, or other public corporations organized for similar purposes in any adjoining state and with other local, state and federal governmental agencies and to enter into co-operative contracts and agreements with any such districts, corporations or agencies.

The decision to enter into the 1994 Agreement was thus a legitimate exercise of its discretionary governmental powers, establishing broad public policy concerning the use of water throughout the District – it was a "quintessential" legislative function of the District and its Board.

Membership of the Board changed in the early 2000s, including the election of two members to the Board who presently own interests in property in the project area, Rodney Lierz and Roger Ploeger. The Tribe, after having lived up to the terms of the 1994 Agreement and having made offers to purchase the lands in the project area at 1.5 to 2.0 times the appraised market value, and after having only one landowner agree to sell, came to the Board in July of 2003 and again in January 2004 with formal requests under the terms of the 1994 Agreement to invoke condemnation proceedings.

It is important to underscore that these condemnation requests by the Tribe were not seeking the exercise of the Board's discretionary authority. The Tribe has pled that under the terms of the 1994 Agreement the Board's obligation to invoke its condemnation authority was a non-discretionary, administrative or ministerial act. See, e.g., First Am. Compl., Dkt. No. 154, ¶¶ 82, 128, 131.

Despite being bound by the 1994 Agreement, and despite the fact that the Board and District do not have to incur any cost for acquiring the land rights for the multi-purpose project,[1] the Board refused to proceed as obligated. At the July 2003 and January 2004 meetings, the

---

[1] Under the express terms of the 1994 Agreement, all costs of land acquisition are to be borne by the Tribe under the terms of the Agreement. See Exhibit A to Declaration of Steve Cadue, to Plaintiff's First Motion for Partial Summary Judgment, Dkt. No. 40.

Board either refused to vote to proceed with condemnation or tabled indefinitely a motion on the condemnation question.  The Tribe has asserted in its complaint that this amounts to a breach of the express terms of the 1994 Agreement.  For purposes of their motion to dismiss the individual Defendants agree with this characterization of their conduct and agree that the Agreement has been breached.

Nonetheless, the individual Defendants have moved to dismiss the claims against them on the grounds that they have <u>absolute</u> immunity, because when they voted not to proceed with exercising the District's power of eminent domain they were engaged in legislative activity.  The individual Defendants' claim to immunity rests on the construction of facts in the case as they would plead them, however, not as the Tribe has pled them.  The fatal flaw in the individual Defendants' argument is the incorrect assumption that they had discretion to decide not to exercise the power of eminent domain.  Such discretion does not exist under the 1994 Agreement and did not exist in July of 2003, or January of 2004 when the request to condemn was indefinitely tabled.  The Board exercised its discretion when it entered into the 1994 Agreement, and once that was done, the Board members were contractually obligated to exercise the power of eminent domain upon the fulfillment of certain conditions by the Tribe which are agreed to have been fulfilled.  That was a ministerial, not a legislative matter, and legislative immunity does not attach to their refusal to honor the Board's contractual obligations.

### Nature and Scope of the Claims to Liability Against the Individual Board Member Defendants

Defendants allege that "[t]he basis for the Tribe's assertion that the individual Board members have an 'express obligation' is unclear.  The only 'obligation' the Tribe has put at issue is the Watershed District's purported obligation to condemn.  There is no obligation that the

individual Board members themselves possess the power of eminent domain or that the 1994 Watershed Plan imposes any obligation on them." Br. at 4. There are several problems with these statements.

First, this is a thinly veiled effort to minimize the nature of the obligation to condemn. This singular act is the linchpin for several decades' worth of collaborative and cooperative planning between the Tribe and the District. As the Tribe set forth in detail in support of its First Motion for Partial Summary Judgment, and the attached Declaration of Steve Cadue, literally thousands of hours and hundreds of thousands of dollars in planning went into the Plum Creek Project. If the Tribe could have condemned the project lands without partnering with the District, it would have done so 30 years ago.

Second, of course the individual Defendants do not possess the authority to condemn, but as elected officials, they are contractually obligated to do so. Also, as elected officials with delegated State authority they hold a sacred trust to the people of Kansas, including to the Tribe and its members who, incidentally, are members of the Watershed District. They have a solemn obligation to engage in fair and honest dealings with the residents of their District in the exercise of their authority and power, and not to abuse their delegated authority and power on the basis of bad faith or self-interested dealing. Refusing to condemn the Plum Creek Project lands is *ultra vires* behavior by the Board, and the remedy sought there is specific performance. The conduct of individual Board members who stand to personally benefit from subverting the development of the project is likewise *ultra vires*, and renders them liable for damages.[2]  *See* discussion in section 4, *infra*.

---

[2] Discovery undertaken since the filing of the action has revealed a serious, concerted effort by several Board members beginning in 2003 to kill the project. These efforts included an orchestrated lobbying campaign, with the active assistance of the Kansas Farm Bureau, while these individuals were members

**Additional Factual Allegations Assumed to be True for Purposes of the Defendants' Motion**

In addition to the various facts set forth in the Memo, the Tribe asserts that the following are relevant and assumed to be true for purposes of the Court's consideration of the Watershed Motion:

1. The Watershed District established its 1978 General Plan for the development of the water resources of the Upper Delaware and Tributaries watershed as an exercise of its powers set out in K.S.A. 24-1209 and 1213.  (First Am. Compl., Dkt. No. 154, ¶¶  21, 40, 55, and see Exhibit B to Declaration of Steve Cadue, to Plaintiff's First Motion for Partial Summary Judgment, Dkt. No. 40.)

2. $150,000 in funding for the engineering consulting firm that wrote the General Plan for the Watershed District was provided by the federal Bureau of Indian Affairs and was arranged by the Tribe.  (First Am. Compl., Dkt. No. 154, ¶¶  21, 55.)

3. The Watershed District entered into the Joint Watershed Board agreement with the Tribe in 1983 as an exercise of its powers set out in K.S.A. 24-1209.  (First Am. Compl., Dkt. No. 154, ¶¶  27, 55, and see Exhibit C to Declaration of Steve Cadue, to Plaintiff's First Motion for Partial Summary Judgment, Dkt. No. 40.)

4. The Watershed District entered into the 1994 Agreement with the Tribe and other state and federal parties as an exercise of its powers set out in K.S.A. 24-1209.   (First Am. Compl., Dkt. No. 154, ¶ 11, and see Exhibit A to Declaration of Steve Cadue, to Plaintiff's First Motion for Partial Summary Judgment, Dkt. No. 40.)

5. The 1994 Agreement to secure the land rights for the Plum Creek Project and to begin to develop other facets of the Project served numerous public benefits to the Tribe and its

---

of the Board.  At least two members of the Board own interests in land in the project area.  This discovery is continuing.  *See* discussion in section 4, *infra*.

members, to non-Indian residents of the Kickapoo Reservation, and to all the residents within the geographic boundaries of the Watershed District. These public benefits included flood protection, soil erosion control, conservation and land treatment, water supply, and water quality improvements. (First Am. Compl., Dkt. No. 154, ¶¶ 35, 40, 88 – 99, 129.)

6. The 1994 Agreement contains a standard provision for the modification of the Agreement. (First Am. Compl., Dkt. No. 154, ¶ 25.)

7. To date, the Watershed District has never made an effort to invoke the modification provision of the Agreement. (First Am. Compl., Dkt. No. 154, ¶ 25.)

## Question Presented

Does the doctrine of absolute immunity for local government officials shield the individual members of the Watershed District Board from personal liability for their conduct in refusing to perform the administrative or ministerial task of invoking the District's eminent domain authority under the 1994 Agreement, once the Tribe's obligations to attempt to secure the land rights for the Plum Creek Project were fulfilled?

## Argument and Authorities

**1. Whether to vote to invoke the District's condemnation authority to secure the land rights for the Plum Creek Project was an administrative or ministerial activity, not a discretionary legislative activity and thus not protected by legislative immunity.**

The individual Defendants have moved to dismiss the claims against them on the grounds that they have absolute immunity because when they voted not to proceed with exercising the District's power of eminent domain they were engaged in legislative activity. Key to Defendants' argument is their attempt to show that the actions of the Defendants were discretionary policy actions because this showing is necessary to any claim of legislative

immunity.[3]  *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (upholding legislative immunity for an ordinance which reflected "a discretionary, policymaking decision").   A function is legislative, and thus protected by immunity, if it "reflects a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts."   *In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001); *Hays County v. Hays County Water Planning Partnership,* 69 S.W. 3d 253, 259 (Tex.App.-Austin 2002).  That the decision to table the request to exercise eminent domain was taken by vote does not change that fact; it does not automatically make it "legislative".  *Kamplain,* 159 F.3d at 1252; *Mission Springs, Inc.,* 954 P.2d at 969; *Lopez,* 2 S.W.3d at 473.

The fatal flaw in Defendants' argument is the incorrect assumption that they had discretion to decide not to exercise the power of eminent domain.  Such discretion does not exist and did not exist at the time the request was indefinitely tabled.   The Board exercised its discretion when it entered into the 1994 Watershed Plan, and once that was done, the Board members were contractually obligated to exercise the power of eminent domain upon the fulfillment of certain conditions agreed to have been fulfilled.  If Defendants wished to modify the Agreement or to change its terms, those possibilities were provided for in the Agreement

---

[3]  Defendants make repeated assertions that the actions complained of involved the exercise of discretion. "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by . . . the fear of personal liability."  Br. p. 9.  "The Tribe seeks to compel the Watershed District to exercise this discretionary legislative power for the Tribe and the Board members, in their discretion, have so far chosen not to do so.  The Board members' decisions were undoubtedly an exercise of discretion regarding a matter of public policy and they should therefore be immune from liability for that decision."  Br. pp. 16-17.  The Brief concludes with the observation that "Local elected officials who, as here, serve the public on a part-time basis were entitled to immunity for discretionary decision making particularly for decisions that involve the exercise of purely governmental powers delegated to them by the Kansas legislature."  Br. at p. 17.

itself, subject of course to the agreement of the other parties.[4]  Defendants, however, have never

exercised the option of attempting to modify the Agreement.

    **2.**    **The facts as pled by the Tribe, and assumed to be true for purposes of the Motion, demonstrate that the individual Defendants lacked any discretion to refuse to fulfill the condemnation obligation.**

Defendants' lack of discretion is illustrated by the facts which are assumed to be true for

purposes of the motion to dismiss.  Defendants state unequivocally at page 5 of their brief that

"For purposes of this Motion to Dismiss only, the following facts are assumed to be true."[5]

Some of the more pertinent facts are as follows:

6.    On May 12, 1994, the Chairman of the Tribe and the President of the Watershed

District signed the 1994 Watershed Plan. (First Am. Compl., Dkt. No. 154, ¶ 3.)

7.    The 1994 Watershed Plan was approved by Congress in 1998. (First Am.

Compl., Dkt. No. 154, ¶ 127.)

8.    In the 1994 Watershed Plan, the Tribe, the Watershed District, and other State and

Federal entities made commitments and agreed to perform specific functions that would

lead to the construction of the Plum Creek Reservoir. (First Am. Compl., Dkt. No. 154, ¶

127.)

9.    The 1994 Watershed Plan, and the respective duties and responsibilities of each

party provided therein, are clear and unambiguous. *Id.*

10.    It has been the intention of all parties to the 1994 Watershed Plan since its

---

[4]  First Am. Compl., Dkt. No. 154, p. 25, and see Exhibit A to Declaration of Steve Cadue, to Plaintiff's First Motion for Partial Summary Judgment, Dkt. No. 40.

[5]  In direct contradiction to this statement, after summarizing some of the facts, the Defendants state that "Though the Board members deny these allegations, whether they are true is *immaterial* for purposes of legislative immunity."  (Emphasis supplied.)  Br. p. 16.  For purposes of this motion, Defendants cannot deny these allegations.

inception to fulfill all terms and conditions of the Plan. (First Am. Compl., Dkt. No. 154, ¶ 128.)

11.   The Watershed District made an express commitment to condemn the fee lands within the Plum Creek project boundaries if the Tribe's efforts to purchase such property fail, as they have so far. (First Am. Compl., Dkt. No. 154, ¶ 82.)

12.   The 1994 Watershed Plan did not give the Watershed District an option to vote to reject the 1994 Watershed Plan or its obligations under it. (First Am. Compl., Dkt. No. 154, ¶ 128.)

13.   The U.S. Department of Agriculture's Natural Resources Conservation Service and the Kansas State Conservation Commission have expended substantial financial resources within the upper Delaware River watershed since the execution of the 1994 Watershed Plan, building water impoundments and other water storage facilities and land treatment measures. (First Am. Compl., Dkt. No. 154, ¶ 129.)

14.   As a direct consequence, the Watershed District and its Board members have received and will continue to receive all the benefits of the 1994 Watershed Plan. *Id.*

15.   To date, the Tribe has performed all of its obligations under the 1994 Watershed Plan. (First Am. Compl., Dkt. No. 154, ¶ 130.)

16.   Private landowners within the Plum Creek Project, with one exception, have refused the Tribe's offers to purchase or exchange property, thus necessitating the exercise of eminent domain authority by the Watershed District. *Id.*

17.   Since January of 2004, the officers and members of the Board have indefinitely tabled the decision to condemn or not condemn the property that is necessary to construct the Plum Creek Reservoir. (First Am. Compl., Dkt. No. 154, ¶ 131.)

22.     In January of 2004, the Watershed District met and indefinitely tabled a resolution to "proceed with condemnation at this time." (First Am. Compl., Dkt. No. 154, ¶ 80.)

23.     This decision to not proceed with the Watershed District's obligations, and other specific conduct undertaken by the Board and its members, breaches the 1994 Watershed Plan and is *ultra vires* of the Board's obligations under Federal and State law. (First Am. Compl., Dkt. No. 154, ¶ 131.).

24.     Pursuant to the express terms of the 1994 Watershed Plan all parties thereto expressly agreed to assume responsibility for all increased costs associated with the implementation of the 1994 Watershed Plan resulting from the failure to perform obligations and commitments in a timely fashion. (First Am. Compl., Dkt. No. 154, ¶ 135.)

25.     Under these express terms, the Watershed District and the Board members have, by virtue of their refusal to perform express obligations under the 1994 Watershed Plan in a timely and responsible fashion, directly caused the costs to the Tribe associated with the various phases of the completion of the projects under the 1994 Watershed Plan to increase substantially.  (First Am. Compl., Dkt. No. 154, ¶ 136.)

Defendants' assertion that these facts are immaterial to the issue of legislative immunity is erroneous and assumes the point at issue – whether the contractual obligations of the Board left any room for discretion.  The fact that in 1994, the Watershed District exercised its discretion to enter into the 1994 Watershed Agreement in which they made certain commitments on which others have relied to their detriment, that the Watershed District and Board members have received many of their expected benefits, that it made an express commitment to condemn fee lands, that the Agreement did not give it the option to vote to reject the Plan or its obligation, that

the Tribe has performed all of its obligations, that all parties expressly agreed to be responsible for increased costs for failure to perform their obligation, are not without effect. The plain language of the 1994 Agreement, therefore, removes any discretion of the Watershed Board to refuse to exercise its power of eminent domain.

3. **The District's approval and execution of the Agreement in 1994 was the last discretionary, policy action taken by the District Board regarding the Plum Creek Project; subsequent action to refuse to vote to condemn was the application of this discretionary policy act to a specific case and is therefore administrative or ministerial in nature.**

The case law is consistent that wherever there is a preexisting obligation or the application of predetermined criteria to a specific case, the actions involved are administrative and not legislative and legislative immunity is not available. *Amy v. Supervisors*, 78 U.S. 136, 138 (1870) (Where county supervisors ordered to levy a tax to pay judgment against the county, failure to levy the tax gave rise to personal liability because it was a ministerial action – distinguished in *Bogan*, 523 U.S. at 971, for its lack of discretion);  *Kamplain,* 159 F.3d at 1252-53, (awarding bids amounts to applying known rules and is administrative, not legislative and citing cases that hold to vote to award a bid is administrative).

In *Lopez,* Lopez sued school officials on the grounds that they promised him a retirement annuity but later voted not to pay it.  The court held that because "the underlying facts related specifically to [the plaintiff], and the action singled out [the plaintiff], a specific individual…the action was administrative, and [defendants] were not entitled to legislative immunity." *Lopez v. Trevino*, 2 S.W. 3d 472, 474 (Tex. App.-San Antonio 1999).

*Lopez* was relied on in *Meecorp,* to deny a motion to dismiss an action on legislative immunity grounds where a city had agreed to serve as surety for a loan which was made only because of this assurance. *Meecorp Capital Markets v. Tex-Wave-Industries*, *LP*, 2006 WL

2883054 (S.D. Tex.).  The resolution authorizing the Surety Bond "expressly acknowledged the enforceability requirements of [the] Surety Bond and represented that the Surety would be jointly and severally liable to [Plaintiff] in the event of default by Tex-Wave."  *Id.*, at 1.  But when default happened, the City did not honor its payments but maintained the Surety Bond was invalid.  The Court held that the motion to dismiss had to be denied because the plaintiff did not seek to make the defendants liable for a policy making decision of general application, but that they made a decision particular to Plaintiff based on the specific facts and circumstances of that loan.  The court stated that "Because the face of the amended complaint, viewed in the light most favorable to the Plaintiff, reveals that Plaintiff is suing the Robstown Defendants for an individualized decision based upon particular facts, legislative immunity does not apply."  *Id.* at 5.

Similarly, in *Mission Springs,* where a City Council approved an application for a construction project, and such approval was sufficient for receipt of a grading permit, which the Council acted to disapprove.  Legislative immunity was not available as a defense under these circumstances.  *Id.* at 259.  See also, *Acierno v. Cloutier*, 40 F.3d 597, 612-615 (3d Cir. 1994) (no legislative immunity for enacting ordinance that voided an approved, and recorded, development plan because action was administrative in nature, not legislative).

These cases are controlling here.  The Tribe acquired bargained for rights under the Agreement, rights which it has never received, although the Water District and Board members have received many of the benefits of the Agreement.  The idea that somehow they had any discretion to decide to live up to the Agreement is not entitled to any weight and their Motion to Dismiss should be denied.[6]

---

[6] Further support for the inability of defendants to refuse to fulfill their obligations under the 1994 Plan comes from the Contract Clause of the United States Constitution.  Nor is there an argument that one

Nor do Defendants fare any better when their actions are viewed from the policy aspect of the legislative action test.  The Tenth Circuit has acknowledged that there is no legislative immunity where there has been no promulgation of public policy.  *Kamplain,* 159 F.3d at 1252; *Sable v. Myers*, 563 F. 3d 1120, 1125 (10th Cir. 2009).  The Board promulgated public policy when it gave due consideration to and exercised its discretion in favor of the 1994 Agreement.  This was a general policy decision which dictated the development of water resources in the District for years to come.  The Plum Creek Project provides multiple benefits to all residents of the Upper Delaware River watershed – flood protection, soil erosion prevention, conservation and land treatment, water storage, and water quality improvements.

**4.   Officials singling out an individual or entity for disparate treatment due to racial animus, or actions taken by officials either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests, are not shielded from liability by absolute immunity.**

The previous sections establish adequate grounds for denying the Motion to Dismiss based solely on the facts which the individual Defendants set forth in their memo.  Assuming, arguendo, that the Court disagrees that the previous arguments are sufficient, the bad faith and self-dealing contentions associated with individual Board members, raised earlier, are entitled to consideration.

The Defendants' decision to take advantage of the benefits conferred by the 1994 Agreement, and to deny to the Tribe its benefits, did not constitute the making of general policy.  The decision acted to deprive one entity, the Tribe, of its benefits.  This is not legislative action.  "If the action involves establishment of a general policy, it is legislative; if the action single[s]

---

Board cannot bind subsequent Boards.  Article 1, §10, Clause 1 of the Constitution provides: "no state shall …pass any…Law impairing the obligation of Contracts…".  This provision of the federal Constitution forbids states from passing any law impairing the obligation of contract and is applicable to political subdivisions of the State. *Frizzell v. Paulsen*, 204 Kan. 857, 861 (1970).

out specific individuals and affect[s] them differently from others, it is administrative." *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991), citing *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984); *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000); *Lopez*, 2 S.W.3d at 474. All cited in *Meecorp*, 2006 WL 2883054 (S.D.Tex.).

The decision in *Cutting* is instructive here. *Cutting* involved the enactment of a zoning ordinance, ordinarily a legislative activity, and the imposition of onerous conditions on a subdivision application due to asserted racial animus. The property owners in the subdivision all had Italian surnames. The First Circuit vacated the judgment of the district court, finding sufficient allegations of bad faith by the Planning Board to remand for further proceedings. *Id.* at at 261-2.

Moreover, absolute immunity does not shield the actions of officials – even if facially legislative – taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests. *Haskell v. Washington Tp.* 864 F.2d 1266, 1278 (6th Cir. 1988). Haskell sued the individual members of the Washington Township, Ohio, Board of Trustees, and other Township officials, for damages for enacting a zoning ordinance that prohibited him from opening a medical clinic that included abortions as one of its services.

In reversing the district court, the Sixth Circuit in *Haskell* remanded and instructed that the "alleged injurious conduct of the Trustees" be examined for a determination of whether the conduct was "administrative, legislative, or outside the scope of either. The degree of immunity from the damages, if any, flowing from each activity will depend on the results of that determination by the district court." *Id.* at 1278. The court also reversed the district court's dismissal of the claim for punitive damages. "A review of the record indicates that there is sufficient evidence from which one could infer that the actions of the individual Trustees were in

17

less than good faith and were instead intended to further personal pecuniary interests, to carry out their individual views regarding abortion, and/or to keep certain classes of individuals from entering the Township." *Id.* at 1278

This Court relied on *Haskell* to deny a motion for summary judgment in a case where the plaintiff sued the individual members of the Kansas City Board of Public Utilities for denying him a promotion allegedly on the basis of race. *Figures v. Board of Public Utilities of Kansas City, Kansas*, 731 F.Supp. 1479, 1483-84 (D. Kan. 1990).

Here the evidence obtained through the initial stages of discovery in 2007, prior to the Court issuing the stay of litigation in August of 2007 (Doc. 103), reveals that the *ultra vires* activities, pled in both the original and First Amended Complaints, carried on by the individual Board members, two of whom own land in the project area, are more serious than first suspected, and this evidence raises serious concerns about bad faith and self-dealing. Activities by individual members – aided and facilitated by the Kansas Farm Bureau – included at least two trips to Washington, D.C. to lobby the Kansas Congressional delegation, the U.S. Departments of the Interior and Agriculture, and their agencies the Bureau of Indian Affairs and the Natural Resources Conservation Service; weekly strategy sessions/meetings; and letter writing campaigns to convince local municipal and Brown County governments to oppose the Tribe and the Project, and to sway public opinion against the Project.[7]

The Tribe is currently engaged in continuing discovery efforts against the individual Defendants to determine more of the details relating to this concerted effort to oppose the

---

[7] Examples of documents exhibiting these activities are attached hereto as Attachments A through D. These documents are specific examples of allegations of *ultra vires* conduct already pled in the Complaint and First Amended Complaint. *Twombly* permits the consideration of this evidence for purposes of the present Motion. Again, under the accepted pleading standard, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

project.   It is not yet known exactly how many of the Board members were aware of, or acquiesced in, or were complicit in the concerted opposition.

## Conclusion

The refusal by the individual Board members to exercise the ministerial function of honoring their contractual obligations is not protected by legislative immunity and the Court should deny the motion to dismiss.

Dated this 13th day of March, 2012.


/s/ *Steven Carl Moore*_____
Steven Carl Moore, Esq.
K. Jerome Gottschalk, Esq.
**NATIVE AMERICAN RIGHTS    FUND**
1506 Broadway
Boulder, Colorado 80302-6296


/s/ *Amelia C. Holmes*_____
Amelia C. Holmes, Esq.
**KICKAPOO TRIBE IN KANSAS**
Post Office Box 110
1107 Goldfinch Road
Horton, Kansas 66439

Attorneys for the Kickapoo Tribe in  Kansas

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of March, 2012, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

***Attorneys for Plaintiff:***
Steven C. Moore smoore@narf.org
Kim J. Gottschalk jeronimo@narf.org
Native American Rights Fund
1506 Broadway
Boulder, CO 80302

***Attorneys for Defendant, Michael Black:***
Daniel G. Steele daniel.steele@usdoj.gov
U.S. Department of Justice
P. O. Box 663
Washington, DC 20044-0663
and
Robin Barkett Moore robin.moore@usdoj.gov
Office of the United States Attorney
301 N. Main Street, Suite 1200
Wichita, KS 67202-4812

***Attorney for Defendant, David Barfield:***
Christopher M. Grunewald chris.grunewald@ksag.org
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597

***Attorneys for Defendant Nemaha Brown Watershed Joint District #7:***
David M. Traster dtraster@foulston.com
Jay Fowler jfowler@foulston.com
Timothy B. Mustaine tmustaine@foulston.com
Daniel Bullard dbullard@foulston.com
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Telephone: 316-291-9725
Fax: 866-347-3138

/s/ *Amelia C. Holmes*
Amelia C. Holmes, Esq.
Kansas Bar #20346