IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KICKAPOO TRIBE OF INDIANS OF THE<br>KICKAPOO RESERVATION IN KANSAS<br>(also known as the KICKAPOO TRIBE IN KANSAS),<br><br>  Plaintiff,<br><br>vs.<br><br>MICHAEL BLACK, in his official capacity as Director,<br>BUREAU OF INDIAN AFFAIRS,<br>UNITED STATES DEPARTMENT OF INTERIOR,<br>*et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 06-2248-CM-DJW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY TO THE PLAINTIFF KICKAPOO TRIBE IN KANSAS' RESPONSE IN OPPOSITION TO THE INDIVIDUAL BOARD MEMBERS' MOTION TO DISMISS

### Introduction

On February 21, 2012, these Defendants, the individual Board members of the Nemaha Brown Watershed Joint District No. 7, filed a Motion to Dismiss (Doc. 166) and a companion Memorandum in Support (Doc. 167). The Motion to Dismiss was based on the principle, well established in the 10th Circuit, that local legislators are absolutely immune from civil liability stemming from state-delegated legislative functions. The Tribe filed its Response on March 13, 2012. The following is the individual Board members' Reply Memorandum.

The Tribe has sued both the Watershed District itself and the individual members of the Watershed District's Board of Directors. In its Response, the Tribe conflates its claims against the Watershed District entity and its claims against the entity's individual Directors. The Tribe entered into an agreement with the Nemaha Brown Watershed Joint District No. 7. (*First Am. Compl.*, Doc. 154, at 12–13, ¶ 31.) The individual Directors have no direct contractual

obligation to the Tribe.  In fact, the Tribe admits that the individual Defendants do not possess the authority to condemn, "*but as elected officials*, they are contractually obligated to do so." (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 7.)  Thus, this "contractual obligation," if any, is not asserted against the Board members personally; instead, the Tribe admits that the contract claims against the Board members are in their official capacity only.  Nevertheless, the Tribe's Response treats its claims against the individuals as if they have direct contractual obligations to the Tribe.

In its Response Brief, the Tribe made several arguments.  First, it stated that the Watershed District's decision regarding whether to exercise eminent domain authority was *not* a legislative function; rather, it was merely an administrative function.  Notably, the Tribe cannot (and does not) deny that a municipal corporation's decision regarding the exercise eminent domain authority is a legislative function that entitles its members to legislative immunity, because binding precedent in this Circuit has held that it is – and these Defendants could find no case that holds otherwise.

Instead, without citing a single on-point case, the Tribe asserts that legislative immunity does not apply here because, by virtue of the 1994 Watershed Plan executed by the Watershed District but not by these defendants, the individual Board members were somehow contractually bound to cast votes in favor of a resolution pursuant to which the Watershed District would exercise its eminent domain authority on behalf of the Tribe.[1]  The Tribe claims that the execution of the 1994 Watershed Plan transformed the Watershed District's decision regarding the exercise eminent domain authority from a legislative function into an administrative one.  No

---

[1]    The Tribe's position raises a number of questions.  Are all of the Directors bound by this supposed obligation?  If there were a motion, a second, and a vote on a resolution pursuant to which the Watershed District would exercise its condemnation power as requested by the Tribe, would individual members who voted against the resolution breach this agreement even if the majority of the Directors voted in favor?

case that these Defendants could locate has ever held that a function that would ordinarily be legislative is suddenly transformed into an administrative one merely because of a preexisting contractual obligation.  There are, however, several cases to the contrary.

Second, the Tribe argues that even if the Watershed District's decision regarding whether to exercise its eminent domain authority was a legislative function, the Board members are still not immune because they are alleged to have acted in bad faith.  In other words, the Tribe urges this Court to deny the protection of the legislative immunity doctrine to all of these defendants because the motives of some of the Board members may have been improper.  But contrary to the Tribe's contentions, binding precedent has clearly held that a court may not consider the motives and intentions of legislators when determining whether legislative immunity applies.

The Tribe sets out "facts" that are assumed to be true for the purposes of this Motion. However, the Tribe's statements contain both facts and conclusions of law.  For example, the Tribe asserts that the "decision to not proceed with the Watershed District's obligations, and other specific conduct undertaken by the Board and its members … is *ultra vires* of the Board's obligations under Federal and State law."  This is a legal conclusion.  Likewise, the Tribe asserts that it "has pled that under the terms of the 1994 Agreement the Board's obligation to invoke its condemnation authority was a non-discretionary, administrative or ministerial act."  (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 5.)  But a Motion to Dismiss for failure to state a claim cannot be denied on the basis of an incorrect statement of the law in a pleading.

I.    **Binding caselaw confirms that legislative immunity is available even when there is a preexisting contractual obligation.**

As stated in the Board members' Motion to Dismiss, courts in this Circuit and elsewhere have consistently held that the decision to exercise eminent domain authority by a municipal entity protects the individual legislators from suit because it is clearly within the "sphere of

legitimate legislative activity." *See, e.g.*, *Sable v. Myers*, 563 F.3d 1120, 1126 (10th Cir. 2009). And though the Tribe begins its brief by stating that courts are "sparing in their recognition of absolute official immunity," (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 3.), the Supreme Court has admonished that "[o]ne species of such legal protection is beyond challenge: the legislative immunity created by the Speech or Debate Clause." *Forrester v. White*, 484 U.S. 219, 224 (1988). And the Supreme Court has recognized legislative immunity for acts that go beyond simply voting on legislation. *See, e.g.*, *Tenny v. Brandhove*, 341 U.S. 367, 378 (1951) (holding that a state legislative committee investigation, alleged to have engaged in a smear campaign to paint a mayoral candidate as a communist, was legislatively immune because the committee members were "acting in a field where legislators traditionally have the power to act"). In fact, the Supreme Court noted, "[t]o find that a committee's investigation has exceeded the bounds of legislative power **it must be obvious** that there was a usurpation of functions exclusively vested in the Judiciary or Executive." *Id.* (emphasis added).

The Supreme Court's expansive view of legislative immunity is further supported by *Bogan v. Scott-Harris*, in which a mayor and a city councilor were protected by legislative immunity for voting to eliminate a public position. 523 U.S. 44, 55 (1998). In that case, the plaintiff alleged that her position was eliminated in retaliation for her complaining about racial slurs uttered by another government employee who was politically connected to members of the city council. *Id.* The Court rejected the plaintiff's argument, noting that eliminating a position was a legislative function because it "may have prospective implications that reach well beyond the particular occupant of the office." *Id.* at 56.

And even if the Washington State and 9th Circuit courts cited by the Tribe do apply legislative immunity "sparingly," courts in this Circuit disagree, choosing instead to "follow[]

4

the Supreme Court's broad view of legislative immunity." *Sable*, 563 F.3d at 1124 (holding that city councilmembers were legislatively immune for voting to condemn the plaintiff's land); *see also Fry v. Bd. of Cnty. Comm'rs of Cnty. of Baca*, 7 F.3d 936 (10th Cir. 1993) (granting immunity to county commission board members for their decision to vacate roadways).

The Tribe claims that the Watershed District's eminent domain authority was transformed into an administrative function due to the Watershed District's earlier decision to enter into the 1994 Watershed Plan.  But the Tribe's argument is logically and factually incoherent, and a search of the law shows that it is without support.

Despite the Tribe's argument that the Watershed District entering into the 1994 Watershed Plan was a "quintessential" legislative function, it could not point to a single case in which entering into a contract was actually held to be a legislative function.  But whether such is true has no bearing on the application of legislative immunity here.  "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.  One must not expect uncommon courage even in legislators.  Given this purpose, whether there is immunity must turn on the ***nature of the act*** . . . ." *Sable*, 563 F.3d at 1124 (internal quotations and citations omitted) (emphasis added).

Importantly, neither the *Sable* opinion, nor any other case these Defendants could find, states that an act that would ordinarily be legislative is somehow transformed into an administrative function because of a previous contractual obligation.

For purposes of this Motion, it is assumed that the Watershed District did indeed promise to exercise its eminent domain authority on behalf of the Tribe in the 1994 Watershed Plan.  However, the fact that the Watershed District, as a municipal entity, has a contractual obligation to exercise its eminent domain authority, does not prevent the Board members from choosing, in

their discretion, to breach that obligation risking the possibility that the Watershed District will be required to respond in damages.

And irrespective of whether performing – or refraining from performing – the function constitutes a contractual breach, the Board members are immune from suit in their individual capacities if the function they performed was legislative, such as choosing whether to exercise the Watershed District's eminent domain authority.  The Court should look to the nature of *the act* itself – exercising eminent domain.  An act does not cease to be legislative merely because of a preexisting contractual obligation regarding the manner of performing it.

The Tribe cites several cases that purportedly support their argument that "wherever there is a preexisting obligation," actions taken pursuant to that obligation are administrative and legislative immunity does not apply.  (*Id.* at 14.)  None of the cases cited by the Tribe supports its assertion that a preexisting contractual obligation transforms a legislative function into an administrative one.

There is caselaw, on the other hand, that undercuts the Tribe's claim that a preexisting contractual obligation transforms a subsequent legislative act into an administrative one.  *See, e.g.*, *Hollyday v. Rainey*, 964 F.2d 1441, 1443 (4th Cir. 1992) (affirming that legislative immunity is a complete defense to plaintiff's breach of employment contract claim); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 776 (3rd Cir. 2000) (rejecting the plaintiff's breach of contract claim because, "[i]n light of *Bogan*, the Pennsylvania Supreme Court's 'discretionary, policymaking decision' to eliminate the [plaintiff's] position . . . should be classified as a legislative act"); and *Drayton v. Mayor and Council of Rockville*, 699 F. Supp. 1155, 1157 (D. Md.) (holding that the plaintiff's breach of contract claim must fail on the ground of legislative

immunity because the action was "inextricably bound up with the legislative act of [the] defendant in eliminating [the plaintiff's] position").

The Tribe cites *Lopez v. Trevino*, 2 S.W.3d 472 (Tex. App. 1999), and *Meecorp Capital Mkts. LLC v. Tex-Wave Indus.*, C.A. No. C-06-148, 2006 WL 2883054 (S.D. Tex. 2006), caselaw not binding on this Court, for the proposition that any decision directed at an individual plaintiff is administrative, and therefore legislative immunity does not apply. (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 15–16.) And later in its brief, the Tribe repeats the same argument, claiming that the Board members' refusal to vote in favor of eminent domain singled out the Tribe individually and legislative immunity therefore does not apply. (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 17–18.) Once again, the Tribe relies on non-binding authority to support this argument, citing *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir. 1984), and *Haskell v. Wash. Tp.*, 864 F.2d 1266 (6th Cir. 1988).

The Tribe's claim that when a municipal corporation singles out a particular individual the act is administrative – not legislative – has been expressly rejected by the Tenth Circuit. In *Kamplain*, the Tenth Circuit stated that "[w]e are not persuaded by the approach taken by some of our sister circuits in determining legislative capacity or function. These courts rest their analysis on the number of persons affected by a legislative body's decision." *Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) (distinguishing *Haskell v. Wash. Tp.*, 864 F.2d 1266 (6th Cir. 1988)).

Further, the Tenth Circuit addressed, and expressly rejected, the Tribe's argument in *Sable*. In that case, the plaintiff alleged that legislative immunity should not apply to shield a city council's decision to condemn his land because the decision was made in bad faith. *See Sable*, 563 F.3d at 1126. The court noted that "[a]lmost every plaintiff will perceive the

challenged conduct as a ***particular act directed at violating the plaintiff's rights***." *Id.* (emphasis added). The court went on to say that "[the plaintiff], quite naturally, focuse[d] on the particularity of the City Council action . . . ." *Id.* And, like here, the plaintiff in *Sable* perceived "[t]he condemnation [as] directed specifically at him. There was, as he [saw] it, no general policy involved in this land grab, just one discrete, and despicable, act." *Id.* The Tenth Circuit rejected the plaintiff's contention, noting that "[a]doption of this perspective . . . would virtually eliminate legislative immunity in the § 1983 context [because] [a]lmost every plaintiff will perceive the challenged conduct as a particular act directed at violating the plaintiff's rights. . . ." *Id.*

Finally, the Tribe expressly acknowledged in its Brief that the Watershed District's refusal to condemn the land at issue here was ***not*** an act directed specifically against it: "The Plum Creek Project ***provides multiple benefits to all residents*** of the Upper Delaware River watershed – flood protection, soil erosion prevention, conservation, and land treatment, water storage, and water quality improvements." (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 16 (emphasis added).) The Tribe's argument that legislative immunity does not apply because the Watershed District's refusal to condemn was particularized against them is incompatible with their statement that the Watershed District's decision to condemn will provide broad benefits not only to the Tribe, but also to "all residents of the Upper Delaware River watershed." (*Id.*)

Allowing suits of this nature to proceed would have far-reaching consequences, resulting in a perpetual threat of litigation hanging over each and every decision that legislators make. Such a result is not only in direct conflict with the purposes underlying legislative immunity protection, but is grossly unfair to legislators as well as the public whom they serve. Because both the majority and the dissenting legislators would be subject to suit, the Board members are

placed in a lose-lose scenario: no matter which way they vote, there will always be one side who is unsatisfied, and all of them can be hauled into court by an aggrieved party. Moreover, exposing Board members to lawsuits based on their decisions gives interested parties unfair leverage over legislative actions. As long as the party's pockets are deep enough to credibly threaten a lawsuit, local legislators (who often have very shallow pockets) will be compelled to kowtow to the outside party's whims out of fear of being sued.

For these reasons, a preexisting contractual obligation to condemn has no bearing on the legislative nature of the individual Board member's decision to not exercise the Watershed District's eminent domain authority. The Tribe's argument that the Watershed District's refusal to condemn was not legislative because it was directed specifically at the Tribe has been expressly rejected by the Tenth Circuit – in part because to hold otherwise would virtually eliminate the doctrine of legislative immunity. Finally, the Tribe itself acknowledges that the project at issue here would provide broad benefits to all residents of the watershed, not just the Tribe and its numerous members. There is no doubt that the Board members' decision to not condemn was a legislative act and that they are therefore immune from liability for that decision. The Board members' Motion to Dismiss should therefore be granted.

## II. The Tribe's allegation that legislative immunity does not apply because the Board members acted in bad faith is belied by Tenth Circuit and Supreme Court caselaw; it is the *function* at issue that dictates whether legislative immunity applies, not the motives of the legislators.

In the alternative, the Tribe argues that legislative immunity should not apply because the Board members are alleged to have acted in bad faith. (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 15–16.) But this argument is in direct conflict with well-established law of this Circuit.

Binding caselaw clearly states that the motives of legislators are irrelevant to the court's application of legislative immunity. *Sable*, 563 F.3d at 1126 (citing *Bogan v. Scott-Harris*, 523

U.S. 44, 53 (1998)).  In declining to consider allegations of bad-faith motives behind a legislative act, the *Sable* court acknowledged that "discomfort may arise from the recognition of legislative immunity in this case.  [The plaintiff's] allegations (whose truth as not been adjudicated) create an ugly picture of the abuse of public power to achieve improper ends."  *Id.* at 1127.  The court further noted that "[p]erhaps such pettiness is more likely to arise in municipal legislative bodies than in legislatures with more members and broader jurisdiction.  It is also true, however, that charges of improper motive are likely easier to bring at the local-government level."  *Id.*  This is significant because "the honor and fortune that come from service in local government are slight enough that many capable candidates for municipal office would surely forgo the rewards of such service if faced with the possibility of being sued for every decision taken without public consensus."  *Id.*

Even when a municipal entity performs a legislative function ineffectually or improperly, suing the individual members of the entity, as the Tribe has done here, is not permitted.  When a legislator exercises a legislative function, they are "exempt from all liability for their ***mistaken use***."  *Bogan*, 523 U.S. at 53 (emphasis added).  Accordingly, filing suit against the legislator is unavailable to the unhappy constituent; rather, resorting to the electoral process is "the ultimate check on legislative abuse."  *Id.*

Allowing this lawsuit to proceed on the Tribe's theory would also have a chilling effect on free speech.  The Tribe asserts that individual board members made at least two trips to Washington, D.C. "to lobby the Kansas Congressional delegation, the U.S. Departments of the Interior and Agriculture and their agencies, the Bureau of Indian Affairs, and the Natural Resources Conservation Service."  (*Br. in Opp'n to Mot. to Dismiss*, Doc. 169, at 18.)  The Tribe also asserts that Board members have engaged in "letter writing campaigns to convince local

municipal and Brown County governments to oppose the Tribe and the Project, and to sway public opinion against the Project." *Id.* But the documents presented by the Tribe involve correspondence of only two of the nine Board members. [2] (Doc. 169-1, at 2–5.)

The Tribe appears to be claiming that these individuals have lost their First Amendment right to petition the government by virtue of being members of the Watershed District. If so, this argument strains credulity. The Supreme Court has repeatedly held that mere attempts to influence passage or enforcement of laws cannot be violative of other laws. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) (stating that it is "clear that the Sherman Act does not prohibit two or more persons from associating together to persuade the legislature . . . to take a particular action" – regardless of the intent or purpose).

"The First Amendment guarantees 'the right of the people to petition the Government for a redress of grievances. The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). Further, "a private citizen exercises a constitutionally protected First Amendment right ***anytime*** he or she petitions the government for redress; the petitioning clause of the First Amendment does not pick and choose its causes." *Van Deelen v. Johnson*, 497 F.3d 1151, 1155 (10th Cir. 2007).

The Tribe is apparently claiming that, because the Watershed District entered into the 1994 Watershed Plan, even Board Members elected years later have given up their First Amendment rights to speech and to petition the government. No law supports such a claim and this Court should reject it.

---

[2]     The Tribe claims that the Court is permitted to review these documents pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Without waiving any argument to the contrary, and for the present Motion only, and only for the issue of whether these particular documents are allowed without converting this Motion to Dismiss to a Motion for Summary Judgment, these Defendants accept the Tribe's interpretation of *Twombly* as true.

The Tribe's argument that the bad faith motives of the Board members negate their legislative immunity protection has been rejected by the Tenth Circuit and stands in direct conflict with that court's admonition that it is the nature of the act, not the motives or intent of the individual legislators that determine whether legislative immunity applies.   The Board members' Motion to Dismiss should be granted.

### Conclusion

As in *Sable*, the Tribe paints an ugly picture of the Watershed District abusing public power to achieve improper ends.  And, just as in *Sable*, the truth of the Tribe's claims has not yet been adjudicated.  But whether the Tribe's claims are true or false is irrelevant for purposes of legislative immunity analysis.  And under that analysis, the law provides a clear result: the Board members are absolutely immune for their decision to not exercise eminent domain authority on the Tribe's behalf.

Well-established caselaw from both the Supreme Court and the Tenth Circuit confirm that this Court should grant these Defendants' Motion to Dismiss the individual Board members. The Board members have absolute legislative immunity for any action taken within the sphere of legitimate legislative activity and the Board members' decision against exercising eminent domain authority on behalf of the Tribe is quintessentially legislative.   Moreover, binding caselaw provides that any motives the Board members may have had in deciding to vote against exercising eminent domain are entirely irrelevant for purposes of legislative immunity.  It is the *nature of the act*, not the intentions of the Board members that determine whether they are protected by legislative immunity.  Therefore, even if all of the Tribe's allegations are assumed to be true, the Board members are entitled to legislative immunity, and the Court should grant their Motion to Dismiss.

Respectfully submitted,


s/David M. Traster
David M. Traster, KS #11062
Daniel J. Buller, #25002
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Telephone: 316-291-9579
Fax: 866-347-9613
dtraster@foulston.com
dbuller@foulston.com

*Attorneys for Nemaha Brown Watershed Joint District No. 7, Dexter Davis, Wayne Heiniger, Glenn Hennigan, Leo Wessel, Rodney Lierz, Jim Renyer, Roger Ploeger, David Zeit, and Rodney Heinen*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2012, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

*Attorneys for Plaintiff:*

Steven C. Moore                    smoore@narf.org
Kim J. Gottschalk                  jeronimo@narf.org
Native American Rights Fund
1506 Broadway
Boulder, CO 80302


Steven A. Campbell                 steve.campbell@ktik-nsn.gov
Ilse L. Smith                      ilse.smith@ktik-nsn.gov
Amelia C. Holmes                   holmesameliac@yahoo.com
Kickapoo Tribe Legal Dept.
P. O. Box 110
1107 Goldfinch Road
Horton, KS 66439

*Attorneys for Defendant, Michael Black:*

Daniel G. Steele                         daniel.steele@usdoj.gov
U.S. Department of Justice
P. O. Box 663
Washington, DC 20044-0663

and

Robin Barkett Moore                      robin.moore@usdoj.gov
Office of the United States Attorney
301 N. Main Street, Suite 1200
Wichita, KS 67202-4812

*Attorney for Defendant, David Barfield:*

Christopher M. Grunewald                 chris.grunewald@ksag.org
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597


                                        *s/David M. Traster*
                                        David M. Traster, #11062
                                        Daniel J. Buller, #25002
                                        FOULSTON SIEFKIN LLP
                                        1551 N. Waterfront Parkway, Suite 100
                                        Wichita, Kansas 67206-4466
                                        Telephone: 316-291-9579
                                        Fax: 866-347-9613
                                        dtraster@foulston.com
                                        dbuller@foulston.com

14