IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KICKAPOO TRIBE OF INDIANS OF THE )
KICKAPOO RESERVATION IN KANSAS,  )
                                 )
              Plaintiff,          )
                                 )
v.                               )
                                 )          No. 06-2248-CM
                                 )
MICHAEL BLACK, et al.,           )
                                 )
              Defendants.         )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas filed this water

rights action against federal and non-federal defendants on June 14, 2006.  On December 23, 2011,

plaintiff filed a first amended complaint (Doc. 154).  Defendants, among others, include individual

Board members of the Nemaha Brown Watershed Joint District No. 7 ("Watershed District"): Dexter

Davis, Wayne Heiniger, Glenn Hennigan, Leo Wessel, Rodney Lierz, Jim Renyer, Roger Ploeger,

David Zeit, and Rodney Heinen (the "individual defendants").  These individual defendants are

named in their official and individual capacities.

The amended complaint asserts four counts.  The third ("Count Three") and fourth ("Count

Six") counts are the subject of this motion.[1]  Specifically, in Count Three, plaintiff seeks declaratory

judgment regarding the individual defendants' failure to perform under the 1994 Upper Delaware

River and Tributaries Watershed Plan and Agreement ("1994 Watershed Agreement"), and it seeks

_____

[1]  The first portion of the case is stayed, and the parties continue to work diligently toward
settlement.

specific performance under the Agreement.  "Count Six" seeks limited and specific recovery of damages—authorized under the 1994 Agreement—against the individual defendants for increased costs that plaintiff has incurred as a result of the individual defendants' failure to timely perform.

Although the Watershed District and the individual defendants contest the existence of an obligation, the individual members seek dismissal on the basis that, even if the Watershed District was bound under the 1994 Watershed Agreement to exercise its power of eminent domain, the individual members of the Watershed District's Board of Directors have absolute legislative immunity from liability.  (Doc. 166.)  Plaintiff counters that the individual defendants lacked discretion to decide not to exercise the power of eminent domain; they were obligated to do so as a ministerial matter under the 1994 Watershed Plan; and their failure to do so is *ultra vires*, making them personally liable.  For the following reasons, the court grants the individual defendants' motion to dismiss.

## I.    Relevant Factual Background

The parties appear to agree as to the essential relevant facts, which the individual defendants admit for purposes of this motion only, and which are taken directly from their motion:[2]

The Watershed District was formed pursuant to the Kansas Watershed District Act, Kan. Stat. Ann. § 24-1201, *et seq.*  The Watershed District is a special district established under the laws of the State of Kansas for specified statutory purposes.  Under Kansas law, the Watershed District has taxing, regulatory, and eminent domain authority and may use those powers to enter into contracts to improve, maintain, and operate works of improvement.  *Id*. § 24-1209.

All of the powers granted to Kansas Watershed Districts are to be exercised by elected

----

[2]  (Doc. 167 at 5–8.)

members of a Board of Directors composed of any odd number of such District's qualified voters. *Id*. § 24-1210.  Watershed District Board members are elected at annual Watershed District meetings.  *Id*. § 24-1211.

On May 12, 1994, the Chairman of the Tribe and the President of the Watershed District signed the 1994 Watershed Plan.  The 1994 Watershed Plan was approved by Congress in 1998.

In the 1994 Watershed Plan, the Tribe, the Watershed District, and other State and Federal entities made commitments and agreed to perform specific functions that would lead to the construction of the Plum Creek Reservoir.

The 1994 Watershed Plan, and the respective duties and responsibilities of each party provided therein, are clear and unambiguous.  The 1994 Watershed Plan did not give the Watershed District an option to vote to reject the 1994 Watershed Plan or its obligations under it.  It has been the intention of all parties to the 1994 Watershed Plan since its inception to fulfill all terms and conditions of the Plan.

The Watershed District made an express commitment to condemn the fee lands within the Plum Creek project boundaries if the Tribe's efforts to purchase such property failed, as they have so far.  The U.S. Department of Agriculture's Natural Resources Conservation Service and the Kansas State Conservation Commission have expended substantial financial resources within the upper Delaware River watershed since the execution of the 1994 Watershed Plan, building water impoundments and other water storage facilities and land treatment measures.  As a direct consequence, the Watershed District and its Board members have received and will continue to receive all the benefits of the 1994 Watershed Plan.  To date, the Tribe has performed all of its obligations under the 1994 Watershed Plan.

Private landowners within the Plum Creek Project, with one exception, have refused the

-3-

Tribe's offers to purchase or exchange property, thus necessitating the exercise of eminent domain authority by the Watershed District.

Since January of 2004, the officers and members of the Board have indefinitely tabled the decision to condemn or not condemn the property that is necessary to construct the Plum Creek Reservoir. On July 24, 2003, the Watershed District held a special meeting to discuss the use of its eminent domain authority on behalf of the Tribe. At that 2003 meeting, the Board members passed a resolution to not proceed with condemnation and to revisit the issue once the Tribe made an effort to acquire the necessary lands by negotiating with local landowners. The motion was unanimously approved by the Watershed District Board.

In January of 2004, the Watershed District met and indefinitely tabled a resolution to "proceed with condemnation at this time." This decision to not proceed with the Watershed District's obligations, and other specific conduct undertaken by the Board and its members, breaches the 1994 Watershed Plan and is *ultra vires* of the Board's obligations under federal and state law.

Pursuant to the express terms of the 1994 Watershed Plan, all parties thereto expressly agreed to assume responsibility for all increased costs associated with the implementation of the 1994 Watershed Plan resulting from the failure to perform obligations and commitments in a timely fashion.

Under these express terms, the Watershed District and the Board members have, by virtue of their refusal to perform express obligations under the 1994 Watershed Plan in a timely and responsible fashion, directly caused the costs to the Tribe associated with the various phases of the completion of the projects under the 1994 Watershed Plan to increase substantially.

Plaintiff notes that the 1994 Agreement contains a standard provision for the modification of the Agreement, and that, to date, the Watershed District has never made an effort to invoke the

-4-

modification provision of the Agreement.  Plaintiff offers additional facts that will be included as necessary in the discussion.

## II.       Applicable Legal Standards

<u>12(b)(6) Motion to Dismiss</u>

In reviewing a Rule 12(b)(6) motion to dismiss, the court assumes as true all well-pleaded facts, and construes any reasonable inferences from these facts in favor of plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009); *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the factual allegations need not be detailed, they must contain facts sufficient to state a claim that is plausible, rather than merely conceivable.  *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).

<u>Absolute Legislative Immunity</u>

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (internal quotation marks omitted).  Such immunity extends to local-government legislators. *See id*. at 49.  "Legislative immunity enables officials to serve the public without fear of personal liability." *Sable v. Myers*, 563 F.3d 1120, 1123 (10th Cir. 2009).  "Not only may the risk of liability deter an official from proper action, but the litigation itself 'creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Id*. at 1123–24 (citing *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 733 (1980) (brackets and internal quotation marks omitted)).  Given this purpose, whether there is immunity must "turn[ ] on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S.

at 54.  The Tenth Circuit takes the United States Supreme Court's broad view of legislative immunity, *Sable*, 563 F.3d at 1125, which cautions against lightly concluding that a legislative body has exceeded legislative power, *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951).

**III.    Discussion**

The power of eminent domain is a power inherently invested in the State.  Here, the Kansas Legislature has expressly delegated the power of eminent domain to the Watershed District.  Kan. Stat. Ann. § 24-1209.  The individual defendants' decision to vote on whether to exercise that power, or to refrain from exercising it, is clearly a legislative activity to which immunity attaches.  *See Sable*, 563 F.3d at 1126–27 (holding council members were entitled to absolute legislative immunity as to their decision to proceed with condemnation action, despite landowner's § 1983 action alleging the condemnation proceeding violated his constitutional rights and was in retaliation for his successful quiet-title action against the city concerning a parcel of property abutting city property); *Fry v. Bd. of Cnty. Comm'rs of Cnty. of Baca*, 7 F.3d 936, 942 (10th Cir. 1993) (granting immunity to board members of a county commission with respect to a decision to vacate roadways where state law authorized the commission to vacate the road and where procedural formalities were followed). *Compare to Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248 (10th Cir. 1998) (refusing to grant legislative immunity to board members who removed plaintiff from a meeting and then decided to ban him from speaking at all future meetings; action was not legislative or related to legislative function, but was purely administrative).

Legislative Act turned Administrative/Ministerial?

Plaintiff argues that the nature of the activity in this situation is different, because of its 1994 Agreement with the Watershed District.  Plaintiff alleges that the Board members of the Watershed District exercised their discretion when entering the 1994 Agreement regarding the Plum Creek

-6-

Project, but having done so, the execution or fulfillment of the terms of that Agreement is administrative or ministerial.  According to plaintiff's argument, the individual defendants are contractually obligated to exercise the Watershed District's power of eminent domain upon plaintiff's fulfillment of its obligations under the Agreement, which the parties agree have been fulfilled.  Plaintiff argues this was a ministerial matter to which immunity does not attach, and not a legislative matter, and that the individual defendants did not have the discretion under the Agreement to refuse to do so.

As to the individual defendants, the court disagrees with plaintiff.  The individual defendants were not personally bound by the Agreement.  Moreover, plaintiff fails to point this court to relevant, binding precedent that would permit this court to recharacterize this clearly legislative act—deciding whether or not to exercise the power of eminent domain—as a ministerial one.

<u>Does Bad Faith Strip Immunity?</u>

Additionally, plaintiff argues that immunity cannot shield the actions of the individual defendants where they were committed in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests.  (Doc. 169 at 23 (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1278 (6th Cir. 1988).)  Plaintiff asserts that ongoing discovery suggests that the individual defendants, two of whom own land in the project area, engaged in *ultra vires* conduct, bad faith, and self-dealing by lobbying Congress and other governmental agencies and engaging in letter-writing campaigns in opposition to the Plum Creek Project.

The court is bound by the precedent of this circuit directing that the application of legislative immunity hinges on the nature of the act, not the motive of the actor.  *See Bogan*, 523 U.S. at 54. The challenged conduct here—voting against condemnation—is well-within the Watershed District's authority.

The court does note, however, that legislative immunity applies only to legislators sued in their individual capacities, not to the legislative body itself.  *See Sable*, 563 F.3d at 1124 (citing *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 133 (5th Cir.1986) ("[A]bsolute legislative immunity [is a] doctrine[ ] that protect[s] individuals acting within the bounds of their official duties, not the governing bodies on which they serve.")).  As the individual defendants all but admit, the Agreement, assuming it is binding and enforceable, bound the Watershed District.  But its Board members retain discretion, protected by the doctrine of legislative immunity, to exercise the Watershed District's authority in a manner inconsistent with that agreement.  (Doc. 172 at 5–6.)

To that extent, the court must grant the individual defendants' motion to dismiss.  Counts Three and Six are dismissed as to the individual defendants.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss the Individual Board Members of the Nemaha Brown Watershed Joint District No. 7 (Doc. 166) is granted.

**IT IS FURTHER ORDERED** that this case remains stayed, and remains referred to the magistrate judge.

Dated this 24th day of May 2012, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**

-8-